**Jon M. Egan**, OSB 002467
Jegan@eganlegalteam.com
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009
Telephone: (503) 697-3427
Fax: (866) 311-5629
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| KATHLEEN EISELE,<br>Plaintiff,<br>vs.<br>HOME DEPOT U.S.A., INC., a Delaware corporation,<br>Defendant. | Case No. 3:20-cv-01740-HZ<br><br>Plaintiff's motion for partial summary judgment on the illegality of Home Depot's rounding policy<br><br>Oral argument requested |

## TABLE OF CONTENTS

I. Introduction ..... 1
II. Facts ..... 3
III. Legal Standards ..... 8
IV. Analysis ..... 10
  A. The *Utne v. Home Depot* case in California does not apply to our case ..... 10
  B. Oregon law does not allow an employer to underpay an employee simply because it overpays a different employee. ..... 11
  C. Home Depot's policy is facially invalid under 29 C.F.R. 785.48(b) ..... 13
  D. Home Depot's policy is neither fair nor neutral as applied ..... 14
    1. Aggregate class analysis ..... 15
    2. Per-employee analysis ..... 16
    3. Per-pay-period analysis ..... 17
    4. Analysis over time ..... 18
V. Conclusion ..... 19

By mutual consent, the parties are filing cross-motions for partial summary judgment on the legality of Home Depot's rounding policy, to be decided prior to class certification. Home Depot has waived any one-way intervention objections for purposes of these motions. The parties have conferred regarding each other's cross-motions, and both are opposed. Plaintiff's motion is supported by the confidential ("Confidential Egan Dec.") and nonconfidential Declarations of Jon M. Egan ("Public Egan Dec.") and Declaration of Jennifer J. Murphy ("Murphy Dec.") filed herewith.

## I. Introduction

Home Depot employs thousands of employees in Oregon. These employees clock in and clock out with their employee ID numbers at timeclocks in their respective facilities. Home Depot records each start and stop time exactly. It then calculates the time between the start and stop time to find the employee's hours worked for the day. If there is more than one pair of times for an employee (if they clock out and then back in from lunch, for example), then all of the times are used. Home Depot therefore uses precise times to calculate an employee's precise hours worked for the day. So far, so good.

However, Home Depot then takes that precise measurement of hours worked and rounds it to the nearest 15 minutes. There is no factual justification for this practice—the company already has each employee's exact hours worked calculated down to the hundredth of an hour. Unlike the historical reason for allowing rounding (for greater ease of calculation in the days of hand-printed paper time cards), it is actually MORE work for Home Depot to add this extra step. *Compare*, *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1077 (9th Cir. 2016) ("Employers use rounding policies to calculate wages efficiently … Corbin's argument, if accepted, would undercut the purpose and would gut the effectiveness of a rounding policy. In fact,

Corbin's preferred interpretation would require employers to engage in the very mathematical calculations that the federal rounding regulation serves to avoid."). But Home Depot benefits from this rounding policy—as discussed herein, the policy results in the systematic underpayment of employees.

This arbitrary rounding of an employee's total hours worked has no support in law. First and foremost, under Oregon law, there is no provision for rounding at all—an employer is not authorized to underpay an employee simply because it overpays another employee. Oregon has not adopted the federal rounding interpretive bulletin, unlike California and some other states where Home Depot's rounding policies have been found legal. This is discussed further in section IV.A. below.

Even if Oregon had done so, that federal interpretive bulletin recognizes the historical practice of rounding *starting* and *stopping* times. It does not authorize arbitrary rounding of exact hours-worked totals. Section IV.B. below.

And even policies that round starting and stopping times are acceptable only if they are "neutral, both facially and as applied." *Corbin*, supra, 821 F.3d at 1076. That "as applied" test is important, because employers often combine facially neutral "rounding policies" with one-sided "attendance policies" in order to systematically underpay workers while projecting an illusion of neutrality. [1] For example, in our case, Home Depot maintains that it has a facially neutral rounding policy, where each employee's hours worked in a given day are rounded to the nearest 15 minutes. That seems neutral,

---

[1] University of Oregon Law Professor Elizabeth Tippett has frequently written about this subject. *See, e.g.*, Elizabeth Tippett, *How Employers Profit from Digital Wage Theft Under the FLSA*, 55 AM. BUS. L. J. 315 (2018); Elizabeth Tippett, Charlotte S. Alexander & Zev J. Eigen, *When Timekeeping Software Undermines Compliance*, 19 YALE J. L. & TECH. 1 (2017); Charlotte S. Alexander, Elizabeth Tippett, *The Hacking of Employment Law*, 82 MO. L. REV. 973 (2017).

but it does not have neutral effects when combined with the attendance policy. Employees are free to clock in a few minutes early or clock out a few minutes late (which are rounded away and lose them time), but if they clock in late or clock out early (which would gain them time in rounding), they are subject to discipline.

This one-sided disciplinary policy, combined with a facially neutral rounding policy, has a strong tendency to underpay employees over time. *Accord*, *Austin v. Amazon.Com, Inc.*, 09-cv-1679-JLR, 2010 WL 1875811, *3 (W.D. Wash. May 10, 2010) ("Contrary to Amazon's arguments, however, the above DOL regulation does not give Amazon a blank check to round time in any manner it sees fit. The regulation does not contemplate the situation where an employer allows rounding when it benefits the employer without disciplining the employee; but disciplines the employee when the rounding does not work to the employer's advantage.").

And Home Depot's policy has indeed consistently underpaid Oregon employees over time. At every level of aggregation or averaging—whether on a per-pay-period, per-employee, or aggregate class basis—employees have lost much more time and wages than they have gained as a result of Home Depot's rounding policy. The specifics of these losses are laid out in section IV.D. below.

The Court should therefore grant plaintiff's motion for partial summary judgment, holding that Home Depot's rounding policy is not authorized by Oregon law, and that plaintiff and the class members are entitled to recover unpaid wages and penalties as a result of time lost to that rounding policy.

## II. Facts

Many of the essential facts in this motion are undisputed. Home Depot's employees record their time worked using the store's time clock:

[redacted]

Exhibit 1 to Confidential Egan Dec. (THD_000679) (unredacted image submitted to chambers). Home Depot employees don't use the card slider on that time clock, they enter their associate ID numbers:

> [Q] We've heard that Home Depot associates clock in by entering their employee number. Is that typically done?
> A Yes.
> Q Okay. Are there any that slide a card across the time clock, or is it all just done by entering the employee number?
> A Associates enter their associate ID.

Exhibit 2 to Public Egan Dec., Deposition of 30(b)(6) designee Barbara Pennington, 7:2 to 7:9.

Unlike some other cases, it is uncontroverted in this case that when an employee is clocked in, they are supposed to be working and are therefore under the control of the employer:

> Q Okay. So if they're on the clock they're supposed to be working, and if they're off the clock they're not supposed to be working. Is that right?
> A Yes.

Exhibit 3 to Public Egan Dec., Deposition of Fed.R.Civ.P. 30(b)(6) designee Elizabeth Dixon, 21:19 to 21:22.

> [Q] And once they're -- well, we'll start with if an employee is off the clock, they're not supposed to be working. Is that correct?
> A Correct. We have a policy that prohibits working off the clock.
> Q Okay. And then once they are on the clock, they are supposed to be working. Is that also correct?
> A Correct.

Exhibit 2 to Public Egan Dec., Deposition of 30(b)(6) designee Barbara Pennington, 7:11 to 7:18.

Employees can be disciplined for not working when they are on the clock, so Home Depot obviously views time on the clock as under the control of the employer. Exhibit 4 to Public Egan Dec., THD_000462 ("Major Violations [include] Demonstrating a blatant disregard for assigned duties and responsibilities; such activities as loafing, sleeping, and reading for personal pleasure while on the clock are evidence of blatant disregard."); Exhibit 5 to Public Egan Dec., THD_000463 ("Minor Violations [include] Failing to perform assigned work after clocking in.").

Indeed, employees are not even supposed to remain in the store unless they are working or doing personal shopping:

> [Q] And so I'm asking, even if it's not in writing given to the associates any more, is this still a Home Depot policy that associates are not permitted to remain in the store or in the DC unless they're working or shopping?
> MS. MEZIAS: Object to the use of the word "policy". It lacks foundation, for this document.
> 23
> BY MR. EGAN:
> Q Go ahead.
> A Again, I still believe that this is our guidance as it relates to associates and when they should be in the store and when they should not be in the store.
> Q That's still the company's expectation?
> A Yes. It's still the guidance.

Exhibit 2 to Public Egan Dec., Deposition of 30(b)(6) designee Barbara Pennington,

22:19 to 23:7.

Thus, to calculate hours worked for the day, Home Depot uses the employee's exact time punches. Home Depot then rounds that exact daily total to the nearest 15 minutes:

> [Q] Well, what we're here here about for this claim is a rounding claim. So I'm going to just go ahead and start by asking you to describe the rounding policy that is currently in effect for all Oregon locations, and then we'll ask some more specific questions after that general description.
> A Sure. So we use a rounding policy that takes the associate's punches. So all our associates are respons- ible for punching in at the start of their shift and then out when they stop working. And we take that time worked and we round to the nearest 15-minute intervals.
> So, as an example, if an associate punches in at 1:00 and they punch out at 4:08, then we calculate that time worked as four [2] hours and 15 minutes. If, in another example, they clock in at 1:00 and punch out at 4:07, that time gets rounded down to three hours.

Exhibit 3 to Public Egan Dec., Elizabeth Dixon deposition, 7:2 to 7:17. It is important to note that Home Depot does not round the starting times or stopping times of its employees; those exact starting and stopping times are recorded and used to calculate the exact hours worked for the day. It is only the final daily shift total that is rounded:

> [Q] And just so I'm clear, it's not the punches that are rounded; it's the raw punch times are used to calculate the time worked, and then that's what's rounded. Is that accurate?
> A That is accurate. We do not round the actual punches themselves. We store those punches. But we calculate the time worked using a rounding logic.

Exhibit 3 to Public Egan Dec., Elizabeth Dixon deposition, at 7:19 to 7:25.

> [A] [W]e don't round the individual punch pairs and then sum them; we round at the shift level.
> BY MR. EGAN:

[2] *Sic*. It is agreed that this situation would result in three (not four) hours and fifteen minutes.

Q Okay. And you don't round at the punch level either. Right?
A Correct.

*Id.* at 19:2 to 19:8.

[Q] Is there any difference in the rounding policy that you just described if there's more than one punch pair in a day?
A So in the event that an associate is clocking out for some reason -- for a meal period, for example -- and then back in, we are not rounding each of those punch pairs separately and aggregating. We're rounding for the shift.

*Id.* at 9:1 to 9:8. Those daily shift totals are rounded using the following table:

[redacted]

Exhibit 6 to Confidential Egan Dec. (unredacted image submitted to chambers), THD_000673. Here is how it is used:

Q The time clock conversion part of that page specifically is what we're referring to. Tell us how, if at all, this chart is used, or how does this reflect the rounding policy.
A Sure. So as I stated before, we use the in and out

35

punches, and then calculate time worked based on this rounding logic. So if an associate's in and out punches sum to an amount of time that is zero to seven minutes, that time gets rounded down. If it's eight minutes to up to 15 minutes, that time gets rounded up to 15 minutes. So that eight minutes to 22 minutes, anywhere in that range, gets rounded up or down to .25 hours.
Q So, for example, it says minutes here. So basically that just means if they worked four hours and seven minutes it would round to four hours even? That's how this is applied?
A If their in and out punches, if the time between

> those punches is the increment above an hour, in hour
> increments, is between zero to seven, then it rounds to
> zero. Yes.

Exhibit 3 to Public Egan Dec., Deposition of Elizabeth Dixon, 34:21 to 35:15.

Home Depot has attendance policies that subject an employee to discipline for clocking in late or clocking out early. Exhibit 7 to Public Egan Dec., THD_000421 ("Attendance occurrences are attendance and punctuality events that result in administration of progressive discipline … Each of the following is equal to one occurrence: … Tardiness (late arrival)"); Exhibit 8 to Public Egan Dec., THD_000424 ("When an associate fails to be at the designated place of work in accordance with the posted schedule for hourly associates … he/she has failed to adhere to the schedule. Likewise, if an associate fails to work the entire workday as scheduled … the associate has failed to adhere to the schedule. [A] failure to adhere to the schedule can lead to progressive discipline."); Exhibit 9 to Public Egan Dec., THD_000425 ("An associate is considered to be late if he/she clocks in after the start of the scheduled shift. … Clocking in late is subject to the accumulation of attendance occurrences and disciplinary action."); Exhibit 10 to Public Egan Dec., THD_000453–54 (infractions subject to progressive disciplinary process include "late in, early out, or other time away from work," "Absence [defined as "Time missed from work that is not otherwise covered above]", and "Late in").

## III. Legal Standards

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's

favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient …." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Faced with cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006); *see also Pinto v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sand, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The non-moving party then bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co.*, 475

U.S. at 586. Furthermore, the party cannot rely on the pleadings to create a "genuine" dispute under Rule 56. *See Anderson*, 477 U.S. at 248.

## IV. Analysis

For the reasons outlined below, Home Depot's rounding policy is not valid, and the Court should rule in plaintiff's favor.

### A. The *Utne v. Home Depot* case in California does not apply to our case

Home Depot has previously directed plaintiff and the Court to *John Utne v. Home Depot U.S.A.,* Inc., No 16-cv-01854-RS, 2017 WL 5991863 at *1 (N.D. Cal., Dec. 4, 2017), in which the Northern District of California granted Home Depot summary judgment on a California state-law rounding claim based on evidence that the rounding policy was neutral on its face and in practice. We expect Home Depot to rely on *Utne* to argue that its rounding policy is legal. This Court should reach the opposite result from *Utne*, for several reasons.

First, the *Utne* court was applying California state law, rather than Oregon state law. This is significant, because California has explicitly adopted the federal rounding interpretive bulletin, 29 C.F.R. 785.48(b). [3] *See's Candy Shops, Inc. v. Superior Court*, 2010 Cal. App. 4th 889, 903 (2012). Our case involves only Oregon law. As discussed further below in section IV.B., Oregon has not adopted that federal interpretive bulletin.

Second, apparently, neither party pointed out to the *Utne* court that the federal rounding interpretation recognizes only the practice of "recording the employees' *starting time and stopping time* to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour." 29 C.F.R. 785.48(b) (emphasis added). In our case, it is uncontroverted that Home Depot *does not do that*. It records the precise starting and

[3] Part 785 merely announces the interpretations that the USDOL will use in enforcing the federal Fair Labor Standards Act; it was not a notice-and-comment regulation, and it explicitly leaves final interpretation to the courts. 29 C.F.R. 785.2.

stopping times and computes the precise hours worked for the shift. Only at that point is rounding arbitrarily applied. This practice was not even valid under the outdated, steam-factory-era federal interpretive bulletin. [4]

Third, the data presented to the *Utne* judge apparently showed that, for a purportedly representative sample of California employees, the employees actually gained time as a result of the rounding policy. In our case, we have all of the time records for all of the Oregon employees, and it shows exactly the opposite—on an aggregate class basis, on a per-employee basis, and on a per-pay-period basis, the class on average lost much more time and wages than it gained as a result of this rounding policy.

## B. Oregon law does not allow an employer to underpay an employee simply because it overpays a different employee.

No Oregon statute, administrative rule, or appellate case allows an employer to underpay an employee as long as they overpay a different employee, and Home Depot has not identified any analog to 29 C.F.R. 785.48(b) in Oregon's law. To date, Home Depot's only arguments on this point have been to point to the *Utne* case applying California law, and to hint that this Court should somehow read into Oregon law the USDOL's 61-year-old announcement that it would not enforce the FLSA against employers who fairly and neutrally round their employees' starting and stopping times. If Home Depot does identify some source of Oregon law in its cross-motion that it

[4] The current language of the federal rounding interpretive bulletin was adopted in 1961. "At that time, rounding rules represented a practical allowance from a pre-digital era, where computing time sheets by hand, by the minute, would have been extremely burdensome. No such efficiency-based justification exists for incorporating rounding into timekeeping software, which can both track and compute time at the millisecond level, automatically." Elizabeth Tippett, Charlotte S. Alexander & Zev J. Eigen, *When Timekeeping Software Undermines Compliance*, 19 YALE J. L. & TECH. 1, 38 (2017).

argues allows rounding, we will address that argument in response to that cross-motion.

Without any rounding rule in Oregon law, we fall back on the general definitions and principles applicable to all wages and hours. *Swearingen v. Amazon.com Servs., Inc.*, 3:19-cv-1156-JR, 2021 WL 6503759, *4 (D. Or. July 19, 2021), *report and recommendation adopted by Judge Hernández,* 3:19-cv-01156-JR, 2021 WL 6124902 (D. Or. Dec 27, 2021). Every employer must keep records of the actual hours worked. O.R.S. 653.045(1)(b). "Work time" includes both time worked and time of authorized attendance. O.R.S. 653.010(11). " 'Hours worked' means all hours for which an employee is employed by and required to give to the employer and includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place and all time the employee is suffered or permitted to work. 'Hours worked' includes 'work time' as defined in ORS 653.010(11)." O.A.R. 839-020-0004(19).

In this case, unlike in some other rounding cases, there is no dispute over whether employees are under employer control when they are clocked in—Home Depot concedes that employees are under employer control and supposed to be working during the time they are clocked in. *See* discussion and citations at pp. 6–8 above. Nor could Home Depot argue otherwise, since an employee is obviously in "authorized attendance" if the employer has allowed them to clock in and expects them to be performing their duties during that time.

Thus, under Oregon law, because the employees were in authorized attendance, and required to give their employer their time, on duty, and on the employer's premises, for all of the time that they were clocked in, they must be paid for that time. Home Depot does not dispute that the employees' clocked-in time is their hours worked. It just argues that it should be able to round away some of those hours worked. There is no

Oregon law allowing that.

Thus, this Court should not follow the USDOL's interpretive bulletin in 29 C.F.R. 785.48(b) regarding rounding, because it does not comport with Oregon law. However, if the Court should choose to follow that interpretive bulletin, we address below why Home Depot's rounding policy fails even under that federal interpretation of federal law.

## C. Home Depot's policy is facially invalid under 29 C.F.R. 785.48(b)

The federal rounding interpretative bulletin, 29 C.F.R. 785.48(b), provides:

> "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

It is uncontroverted that Home Depot does not "record[] the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour." Home Depot records the employees' exact, precise starting and stopping times, and it calculates the employees' exact, precise hours worked using those times. It only rounds the total. There is no textual support for that practice in 29 C.F.R. 785.48(b), nor does the purpose of that interpretive bulletin support the practice. This rounding interpretive bulletin was adopted to make hand-calculations more efficient in the steam-factory era. Today, not only is time-punch-rounding unnecessary in general, but already-calculated-shift-total rounding is LESS efficient than simply paying for hours worked—it ADDS a completely unnecessary extra step. Thus, even on the face of the interpretive bulletin, Home Depot's practice is not supported.

## D. Home Depot's policy is neither fair nor neutral as applied

Home Depot's policy has indeed consistently underpaid Oregon employees over time. At every level of aggregation or averaging—on a per-pay-period, per-employee, or aggregate class basis—employees have lost much more time and wages than they have gained as a result of Home Depot's rounding policy. That is because Home Depot, like most other employers, puts a thumb on the scale of an otherwise neutral policy. The rounding can go either way, but the attendance policy only punishes for late clock-ins and early clock-outs. To avoid that discipline, the average employee will clock in a few minutes early and clock out a few minutes after the end of their shift. Under this carefully engineered choice architecture, an average employee is much more likely to lose a few minutes of work time than they are to gain a few minutes.

We have discussed above why the federal rounding interpretive bulletin has not been incorporated into Oregon's wage-and-hour regime. However, even under the federal rounding interpretive bulletin, the legality or illegality of the rounding policy depends on whether it is neutral on its face, rounds in increments of 15 minutes or less, and works out so that the employees are still fully paid for all hours actually worked. Courts have recognized that non-neutral attendance policies can invalidate facially neutral rounding policies under the federal rounding interpretive bulletin. In *Austin v. Amazon.com, Inc.*, No. 09-cv-1679-JLR, 2010 WL 1875811, *1–*2 (W.D. Wash. May 10, 2010), for example, the court found that the plaintiff stated an FLSA claim where Amazon's policy allowed employees to clock in seven minutes or less before their scheduled shift and were paid from their scheduled start time going forward, but if they clocked in more than three minutes past their scheduled start time, Amazon would "flag" that employee for discipline.

The court found that 29 C.F.R. § 785.48(b) "does not contemplate the situation where an employer allows rounding when it benefits the employer without disciplining the employee; but disciplines the employee when the rounding does not work to the employer's advantage." *Id.* at *3. *See also, e.g.*, *Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 614 (W.D. Va. 2019) ("Here, LGMC's rounding policy is facially neutral because all employee time punches are rounded to the nearest quarter-hour without an eye towards whether the employer or the employee was benefiting from the rounding. However, LGMC's disciplinary policy requiring employees to clock in seven minutes prior to a shift, disciplining employees for clocking in after a shift, and allowing, but not guaranteeing, employees the right to clock out seven minutes prior to the end of their shift may create an inequity in the rounding policy when applied." (internal citation omitted)).

As seen below, Home Depot's thumb-on-the-scale disciplinary policy has indeed resulted in a substantial underpayment of employees at every level of analysis.

### 1. Aggregate class analysis

On a class-wide basis, the employees have gained 34,802.01 hours and $460,269.60 in wages as a result of the rounding policy, and they have lost 47,366.06 hours and $616,324.14 in wages as a result of the rounding policy. Murphy Dec. at ¶ 9. As seen below, the time and wage losses are substantially more than the gains:







## 2. Per-employee analysis

There were 7,321 employees with a net gain of time and 7,347 employees with a net gain of wages as a result of the rounding policy. Murphy Dec. at ¶ 10. There were 12,831 employees with a net loss of time and 12,828 employees with a net loss of wages as a result of the rounding policy. *Id.* 355 employees neither lost nor gained time and 332 neither lost nor gained wages as a result of the rounding policy. *Id.* As seen below, many more employees lost than gained:







And in addition to raw numbers of employees, the average employee who gained as a result of the rounding policy gained 1.38 hours and $18.87. *Id.* The average employee who lost as a result of the rounding policy lost 1.77 hours and $22.97. *Id.* On a per-

employee basis, the losers lost more than the winners:




### 3. Per-pay-period analysis

There were 205,801 pay periods in which an employee gained time and wages as a result of the rounding policy, and 254,392 pay periods in which an employee lost time and wages as a result of the rounding policy. Murphy Dec. at ¶ 11.




And in addition to raw numbers of pay periods, the average pay period resulting in a gain gained 0.17 hours and $2.24. *Id.* The average pay period resulting in a loss lost 0.19 hours and $2.42. *Id.* On a per-pay period basis, the losers lost more than the winners:







## 4. Analysis over time

The negative effects of Home Depot's rounding policy are obvious when viewed over time. When we look at the employees' average time balance (the running net total of hours gained and lost), the longer they worked, the more time they lost:




Murphy Dec. at ¶ 11. And the same is true of wages—the more pay periods the average employee worked, the more wages they lost (*id.*):




## V. Conclusion

Home Depot's rounding policy is illegal. Nothing in Oregon law allows an employer to underpay an employee simply because it overpays a different employee. Oregon has not incorporated the federal rounding interpretive bulletin. Even if it had, Home Depot's policy does not pass muster under that bulletin, either on its face or as applied. The Court should therefore grant plaintiff partial summary judgment, holding that Home Depot's rounding policy is not authorized by Oregon law, and that plaintiff and the class members are entitled to recover unpaid wages and penalties as a result of time lost to that rounding policy.

Respectfully submitted this 22nd day of July, 2022

JON M. EGAN, P.C.
*/s/ Jon M. Egan*

JON M. EGAN, OSB # 002467
(503) 697-3427
Attorney for Plaintiff