IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHLEEN EISELE,                                    No. 3:20-cv-01740-HZ

                    Plaintiff,                      OPINION & ORDER

        v.

HOME DEPOT U.S.A., INC., a Delaware
corporation,

                    Defendant.


Jon M. Egan
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009

        Attorney for Plaintiff

David G. Hosenpud
Erin M. Wilson
Hank Stebbins
Lane Powell PC
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204


1 – OPINION & ORDER

Donna Marie Mezias
Akin Gump Strauss Hauer & Feld LLP
580 California Street, Suite 1500
San Francisco, CA 94104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      This matter is before the Court on Defendant Home Depot's Motion for Partial Summary Judgment [ECF 52] and Plaintiff Kathleen Eisele's Cross-motion for Partial Summary Judgment on the Illegality of Home Depot's Rounding Policy [EFC 56]. For the following reasons the Court grants in part and denies in part Defendant's Motion and grants in part and denies in part Plaintiff's Cross-Motion.

## BACKGROUND

      The following facts are taken from the parties' filings on summary judgment and are undisputed unless otherwise noted.

      Defendant Home Depot uses a time-keeping software system, Kronos, to track the time worked by non-exempt employees (associates) for payroll purposes in Oregon and elsewhere. Associates use Kronos to punch in and out at the beginning and end of their shifts and to punch in and out for meal breaks. Kronos precisely records the time the associates work based on these punches, but is programmed to round each associate's total shift time either up or down to the nearest quarter of an hour for pay purposes. Specifically, minutes 0-7 round to zero minutes; minutes 8-22 round to 15 minutes; minutes 23-37 round to 30 minutes; minutes 38-52 round to 45 minutes; and minutes 53-60 round to 60 minutes.

      On August 28, 2020, Plaintiff Kathleen Eisele filed a class action complaint against Defendant in Multnomah County Circuit Court bringing claims for failure to pay wages when due in violation of Oregon Revised Statute § 652.120 and for failure to pay wages on termination

in violation of Oregon Revised Statute § 652.140. Plaintiff alleges Defendant "rounded plaintiff's and other class members' time punches, resulting in a consistent net underpayment to them" and "failed to pay plaintiff and the class members all earned and unpaid wages (including vacation pay) within the statutory deadline to do so upon termination of their employment." Compl. ¶¶ 5-6. Plaintiff alleges two classes of putative plaintiffs: (1) the rounding class "consisting of all current and former Oregon Home Depot employees who lost time due to [Defendant's] rounding policies" and (2) the final paycheck class "consisting of all former Home Depot employees who did not receive all wages due in their final paycheck . . . within the statutory deadline." *Id*. at ¶ 7(1) and (2).

On October 8, 2020, Defendant removed the matter to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A).

On July 22, 2022, Defendant filed a Motion for Partial Summary Judgment in which it seeks an "order determining that Plaintiff's claim for failure to provide wages due on behalf of herself and the 'Rounding Class' fails as a matter of law" and the Defendant is not liable for penalty wages on Plaintiff's claims based on rounding.

On July 22, 2022, Plaintiff filed a Cross-Motion for Summary Judgment in which she seeks an order holding Defendant's rounding policy is not authorized by Oregon law and, therefore, Plaintiff and the class members are entitled to recover unpaid wages and penalties as a result of time lost to the rounding policy.

The Court heard oral argument and took the Motions under advisement on September 28, 2022.

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff asserts rounding is not permissible under Oregon law and, even if it is permissible, Defendant's system does not meet the applicable standard. Defendant, on the other hand, asserts rounding is permissible under Oregon law and its rounding system satisfies the requirements.

## I.    Oregon Wage-and-Hour Law Generally

Oregon statute requires "[e]very employer" to "establish and maintain a regular payday, at which date the employer shall pay all employees the wages due and owing to them." Or. Rev. Stat. § 652.120(1). Wages are defined as "compensation due to an employee by reason of employment."[1] Or. Rev. Stat. § 653.010 (10). Oregon's administrative code related to wage-and-hour statutes defines "hours worked" as

> all hours for which an employee is employed by and required to give to the employer and includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place and all time the employee is suffered or permitted to work. 'Hours worked' includes 'work time' as defined in ORS 653.010(11).

O.A.R. § 839-020-0004(19). "[W]ork time includes both time worked and time of authorized attendance." O.R.S. § 653.010(11).

"Any employer who pays an employee less than the wages to which the employee is entitled. . . is liable to the employee affected: (a) For the full amount of the wages, less any amount actually paid to the employee by the employer; and (b) For civil penalties provided in ORS 652.150." Or. Rev. Stat. § 653.055(1).

---

[1] Oregon does not define "employment" but defines to "employ" as "to suffer or permit to work." O.R.S. § 653.010(2).

II.    **Rounding**

Plaintiff contends "[n]o Oregon statute, administrative rule, or appellate case allows an

employer to underpay an employee as long as they overpay a different employee" (*i.e.*, there is

no authority for rounding under Oregon law). Pl. Motion for Summ. J. at 11. Defendant concedes

there is not any Oregon statute, rule, or appellate case that permits rounding. Defendant,

however, asserts that because Oregon statutes and regulations do not explicitly prohibit rounding,

the Court should borrow the rounding standard found in 29 C.F.R. §785.48(b), which provides:

> It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

Defendant notes this district applied § 785.48(b) and found rounding was permissible

under Oregon law when the rounding policy complied with the parameters of § 785.48(b) in *Du

Ju v. Kelly Servs. Inc.*, No. CIV. 3:08-1213-HA, 2011 WL 4625669 (D. Or. Sept. 28, 2011). In

that case the plaintiff alleged, among other things, that the defendant failed to pay her all of her

wages on termination in violation of O.R.S. § 652.140 because plaintiff's final paycheck

included wages for 1.25 hours of work, rather than the 1.3564 hours that plaintiff actually

worked. *Id.* at *11. The defendant asserted the plaintiff was paid appropriately because it

"lawfully rounded plaintiff's wages to the nearest quarter hour." *Id.* The court agreed with the

defendant noting although "Oregon does not have a regulation or statute regarding rounding," the

Oregon Bureau of Labor and Industry (BOLI) "relies on federal regulations for guidance,"

including the regulation that permits rounding under specific circumstances. *Id.* (citing BOLI,

*Employer Can "Round " Hours, But Must ensure that All Time is Actually Paid*, www.oregon. gov/BOLI/TA/ TA COL 012307 Rounding Hours.pdf (2007)). Ultimately, the court granted the defendant's motion for summary judgment on the plaintiff's claim for $1.17 in unpaid wages "[b]ecause there is no evidence to suggest that defendant's rounding policy was not applied fairly, or resulted in unpaid wages over time." *Id.* This Court notes, however, that the BOLI guidance statement on which the *Du Ju* court relied is no longer on BOLI's website. When Defendant asked BOLI for a copy of the statement on which the *Du Ju* court relied, BOLI provided the statement but noted:

> While [BOLI] will always provide public records in our control, this is a record that was inadvertently retained beyond its retention period.
>
> Please keep in mind that administration of the Bureau's wage and hour Division has changed several times since 2007.
>
> While federal regulations may be instructive, the agency is not bound by those regulations and would determine on a case by case basis whether all hours worked had been properly compensated.
>
> We cannot over-stress the importance of the employee still being paid for all hours worked.

Hosenpud Decl. [53], Ex. 4 at 1. This suggests BOLI likely no longer approves of the guidance statement relied on by the court in *Du Ju*. In addition, the court in *Du Ju* did not analyze whether the rounding provision of § 785.48(b) is compatible with Oregon wage-and-hour law generally. Accordingly, the Court finds *Du* Ju to be of little assistance in resolving whether rounding is permissible under Oregon law.

Defendant also relies on the fact that a district court in California and a California state trial court approved Defendant's rounding practices under California wage-and-hour law: *Utne v. Home Depot U.S.A., Inc.*, No. 16-CV-01854-RS, 2017 WL 5991863, at *2 (N.D. Cal. Dec. 4, 2017)*, and *Camp v. Home Depot U.S.A., Inc.*, 19CV344872 (Sup. Ct. Cal. Feb. 24, 2021),

*reversed and remanded* No. H049033, 2022 WL 13874360, at *1 (Cal. Ct. App. Oct. 24, 2022).

In reaching their conclusions both *Utne* court and the trial court in *Camp* relied on the California

Court of Appeals' decision in *See's Candy Shops, Inc. v. Superior Court*, 2010 Cal. App. 4th 889

(2012). Recently, however, the California Court of Appeals reversed and remanded the trial

court's decision in *Camp,* questioned the holding of *See's Candy,* and found California law did

not permit rounding as set out in § 785.48(b). *Camp v. Home Depot U.S.A., Inc.*, 2022 WL

13874360 (Cal. Ct. App. Oct. 24, 2022). *Camp*, therefore, calls into question the California

courts' approval of Defendant's rounding program.

     The decision in *Camp* is instructive. In *Camp* the plaintiff[2] filed a putative class action

against Home Depot alleging that its electronic timekeeping system captured each minute

worked by employees, but due to Home Depot's rounding policy, putative class members were

paid for less time than was reflected in Home Depot's timekeeping system. *Camp*, 2022 WL

13874360, at *1. Home Depot moved for summary judgment on the basis that its "rounding

policy was neutral on its face, neutral as applied, and otherwise lawful under *See's Candy*." *Id.*

The trial court found Home Depot's rounding policy "is neutral on its face and is used in such a

manner that it will not result, over a period of time, in failure to compensate employees properly

for all the time they have actually worked," and, therefore it met the standard articulated in *See's*

*Candy. Id.* Accordingly, the trial court granted Home Depot's motion for summary judgment.

The plaintiff appealed asserting that "notwithstanding *See's Candy*, neither the [California] Labor

Code nor the relevant wage order authorizes time rounding that results in an individual employee

failing to receive compensation for all time worked." *Id.* The Court of Appeals agreed with the

---

[2] Two individuals brought the action against Home Depot, but the court dismissed one individual for lack of standing.

plaintiff and reversed and remanded for the trial court to enter an order denying Home Depot's motion for summary judgment.

The court began its analysis in *Camp* by observing that the California Supreme Court "'has never decided the validity of the rounding standard articulated in *See's Candy*,'" and, therefore, it is still an open question in California. *Camp*, 2022 WL 13874360, at *2 (quoting *Donohue v. AMN Services*, LLC 11 Cal.5th 58, 72 (2021)). The court then noted California law defines "hours worked" as "'the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.'" *Camp*, 2022 WL 13874360, at *4 (quoting Cal. Code Regs., tit. 8, § 11070, subd. 2(G).) The phrase "suffered or permitted to work" under California law "encompasses the time during which the employer knew or should have known that the employee was working on its behalf." *Id.* In addition, California wage orders[3] require minimum wages to be paid to "an employee for 'all hours worked'" and the California "'Labor Code . . . contemplates that employees will be paid for all work performed.'" *Id.* (quoting Cal. Code Regs., tit. 8, § 11070, subd. 4(A); *Troester v. Starbucks Corp.*, 5 Cal.5th 829, 840 (2018)). For example, the California Labor Code provides: "'*Any work* in excess of eight hours in one workday and *any work* in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. *Any work* in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.'" *Camp*, 2022 WL 13874360, at *4 (quoting Cal. Lab. Code § 510(a))(emphasis in *Camp*). Next the court reviewed three cases that provided possible guidance: *See's Candy*, *Troester,* and *Donohue*.

---

[3] California wage orders are the equivalent of regulations enacted by BOLI.

Regarding *See's Candy,* the *Camp* court noted in reaching its conclusion that California courts should adopt the rounding provision of § 785.48(b) the court in *See's Candy* explained "in the absence of controlling or conflicting California law, California courts generally look to federal regulations under the FLSA for guidance." *See's Candy*, 210 Cal. App.4th at 902. The *See's Candy* court also rejected the plaintiff's argument that § 785.48(b) conflicted with California Labor Code § 510(a). The *Camp* court noted the assertion in *See's Candy* that California courts would look to the FLSA for guidance as to rounding was undercut by the California Supreme Court's decision in *Troester v. Starbucks Corporation*, 5 Cal.5th 829 (2018).

Turning to *Troester* the *Camp* court found the California Supreme Court provided guidance in that case regarding "(1) the circumstance of a federal wage and hour standard that has no apparent counterpart in California's wage and hour laws, and (2) the proper interpretation of various Labor Code and wage order provisions." *Camp*, 2022 WL 13874360, at *7. Specifically, in *Troester* the court analyzed whether the FLSA *de minimus* rule found in 29 U.S.C. § 785.47 applied to California wage-and-hour claims. The court first noted it had previously stated "[a]bsent convincing evidence of the [Industrial Welfare Commission's][4] intent to adopt the federal standard for determining whether time . . . is compensable under state law, we decline to import any federal standard, which expressly eliminates substantial protections to employees, by implication." *Troester*, 5 Cal.5th at 839 (quotation omitted). The court pointed out that it has "cautioned against confounding federal and state labor law and explained that [when] the language or intent of state and federal labor laws substantially differ, reliance on federal regulations or interpretations to construe state regulations is misplaced." *Id.* (quotation omitted). The *Troester* court then noted California Labor Code § 510(a) "'contemplates that employees

---

[4] The Industrial Welfare Commission (IWC) is California's equivalent of BOLI.

*will be paid for all work performed*.'" *Camp*, 2022 WL 13874360, at *8 (quoting *Troester,* 5 Cal.5th at 840)(emphasis in *Camp*). The court found the federal *de minimus* doctrine, which permits "employers under some circumstances to require employees to work as much as 10 minutes a day without compensation is less protective than a rule that an employee must be paid for 'all hours worked' or '[a]ny work' beyond eight hours a day" and there was not any "convincing evidence of the IWC's intent to adopt the federal standard." *Troester*, 5 Cal. 5th 829, 840–41 (quotation omitted). The court also pointed out that "[w]hat [the defendant] calls '*de minimus*' is not *de minimus* at all to many ordinary people who work for hourly wages." *Id.* at 847. The court recognized that "one of the main impetuses behind the *de minimis* doctrine in wage cases is the practical administrative difficulty of recording small amounts of time for payroll purposes," but noted "employers are in a better position than employees to devise alternatives that would permit the tracking of small amounts of regularly occurring worktime." *Id.* at 848 (quotation omitted). In addition, "technological advances . . . help with tracking small amounts of time." *Id.* Ultimately, the court "decline[d] to adopt a rule that would require the employee to bear the entire burden of any difficulty in recording regularly occurring worktime." *Id.*

Finally, the *Camp* court reviewed *Donohue v. AMN Services*, LLC 11 Cal.5th 58 (2021), in which the California Supreme Court addressed the issue of time rounding in the context of meal periods. The *Donohue* court noted the Court of Appeals relied on *See's Candy* in concluding employers may use rounded time punches for meal periods. The court pointed out that it "has never decided the validity of the rounding standard articulated in *See's Candy*" and it was "not asked to do so" in *Donohue*. 11 Cal.5th at 72. The court concluded, even assuming the validity of *See's Candy,* the rounding policy in *Donohue* did not "comport with its neutrality

standard." *Id.* at 73. The court recognized that "rounding was developed as a means of 'efficiently calculat[ing] hours worked' and wages owed to employees." *Id.* (quoting *See's Candy*, 210 Cal.App.4th at 903). The defendant, however, "was already using an electronic timekeeping system . . . that recorded employees' unrounded time punches. . . . [The defendant] actually had to take the extra step of converting the unrounded time punches to rounded ones; it is not clear what efficiencies were gained from this practice." *Id.* at 73-74.

Extrapolating from *Troester* and *Donohue* the *Camp* court concluded the trial court erred when it concluded Home Depot, relying on its rounding policy, met its burden to show there was not any triable issue of material fact regarding whether the plaintiff was paid for all of the time he worked. *Camp*, 2022 WL 13874360, at *10. Specifically, the court reiterated that the California Labor Code contemplates that "employees will be paid for all work performed." *Id.* (citations omitted). In addition, courts have held when "the language or intent of state and federal labor laws substantially differ, reliance on federal regulations or interpretations to construe state regulations is misplaced." *Id.* (citations omitted). The court noted § 785.48(b) "has no analog in the Labor Code or in the applicable wage order," therefore, there is "not merely a difference in language, but a complete absence of language, in the Labor Code or . . . the applicable wage order, authorizing time rounding that results in . . . underpayment of an individual employee for all time worked, [when] the employer can capture and has captured the employee's worktime in minute increments." *Id.* Moreover, the *Donohue* court "called into question the efficiencies historically attributed to time rounding given that advances in technology have enabled employers to more easily and more precisely capture time worked by employees." *Id.*, at *11. The *Camp* court rejected Home Depot's explanation that "rounding makes it easier for employers to produce verifiable wage statements because unrounded time does not easily

translate into the decimal system used to calculate . . . pay" because Home Depot did not cite any "provision in California law that privileges arithmetic simplicity over paying employees for all time worked." *Id.* In summary, the *Camp* court concluded Home Depot failed to show there was not any material issue of disputed fact regarding the plaintiff's claim for unpaid wages and "if an employer, as in this case, can capture and has captured the exact amount of time an employee has worked during a shift, the employer must pay the employee for 'all the time' worked." *Id.*, at *12.

Oregon statute defines "wages" as "compensation due to an employee by reason of employment." Or. Rev. Stat. § 653.010. To employ "includes to suffer or permit to work" and "work time includes . . . hours worked." O.R.S. § 653.010(2), (11). "Hours worked" is defined as "*all hours* for which *an employee* is employed by and required to give to the employer" and "includes 'work time' as defined in § 653.010(11)." O.A.R. § 839-020-0004(19)(emphasis added). In addition, Oregon law requires "an employer" to "pay *each employee* . . . no less than the minimum rate(s) of wage . . . for *each hour* worked by the employee." O.A.R. § 839-020-0010(1)(emphasis added). Oregon statute requires when an employee is discharged or terminated by mutual agreement that "*all wages* earned and unpaid . . . become due and payable." Or. Rev. Stat. § 652.140(1)(emphasis added). In addition, Oregon Revised Statute § 653.055(1) provides "[a]ny employer who pays an employee less than the wages to which the employee is entitled [under the wage-and-hour statutes] is liable to the employee affected" for damages. Oregon's wage-and-hour laws, therefore, contemplate that every employee will be paid for all hours worked. Moreover, § 785.48(b) does not have an analog in Oregon's wage-and-hour statutes or regulations. In Oregon, as in California, there is not merely a difference in language between

§ 785.48(b) and some provision of Oregon wage-and-hour law, there is "a complete absence of language, in the [Oregon statutes] or in the applicable [wage regulations], authorizing time rounding that results in the underpayment of an individual employee for all time worked, [when, as here,] the employer can capture and has captured the employee's worktime in minute increments." *Camp*, 2022 WL 13874360, at *10. In fact, § 785.48(b) appears to be in direct conflict with Oregon wage law. Specifically, § 785.48(b) requires only that the rounding practice average out over time to "employees" on the whole, not as to each individual employee whereas Oregon law requires each employee to be paid for all of the time the employee works.

Defendant asserts here, as it did in *Camp,* that rounding "results in a readily verifiable paycheck because partial hours are shown in quarterly decimals, *e.g.*, 6.25 hours. By contrast 6 hours 10 minutes, if paid precisely, would show as 6.16666 . . . hours on the wage statement." Def. Mot. for Summ. J. at 4 n.2. This Court is not persuaded by Defendant's argument because Defendant records the precise time worked by associates and then must take an extra step to round each employee's total shift wages. More importantly, Defendant does not point to any provision in Oregon law "that privileges arithmetic simplicity over paying employees for all time worked." *Camp*, 2022 WL 13874360, at *11.

In summary, the Court concludes Defendant has not established that Oregon law authorizes time rounding that results in the failure to pay each employee for all of the time worked particularly when, as here, an employer can capture and has captured the exact amount of time an employee has worked.

## III.    *De Minimus*

Defendant asserts even if the Court concludes Oregon law does not permit rounding under the circumstances here, it is still entitled to summary judgment because "any lost minutes

are *de minimus*, and, therefore, not compensable." Def. Mot. for Summ. J. at 16. Defendant relies

on *Corbin v. Time Warner Entertainment*, 821 F.3d 1069 (9th Cir. 2016). In that case the

plaintiff brought a putative class action against his former employer alleging violations of the

FLSA and California wage laws based on the defendant's rounding policy. The Ninth Circuit

concluded the plaintiff's "one minute of uncompensated time . . . was *de minimus*," and,

therefore, the district court did not err when it granted summary judgment in favor of the

defendant. The court relied on the three-pronged *de minimus* test set out in *Lindow v. United*

*States* that instructs courts "to consider: '(1) the practical administrative difficulty of recording

the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the

additional work.'" *Corbin*, 821 F.3d at 1081 (quoting *Lindow*, 738 F.2d 1057, 1063 (9th Cir.

1984)). The *Corbin* court concluded the administrative difficulty of recording the additional time

in that case was "quite high" because to determine whether an individual employee had any

unpaid time accumulated "by logging into an auxiliary computer program before logging into the

. . . timekeeping program," as the plaintiff had, would require the defendant to "double-check

four time stamps . . . for each employee on each day on the off-chance that an employee

accidentally loaded an auxiliary program . . . before loading" the timekeeping program. *Id.* at

1081-82. In addition, the aggregate amount of compensable time was "only one minute." *Id.*

Finally, the additional uncompensated time was not "regular," rather it "was the result of [the

plaintiff's] violation of a company policy mandating that all work activities be on the clock." *Id.*

at 1082.

     *Corbin*, however, is of limited relevance in this case because it was decided before the

California Court of Appeals decision in *Troester* and, in any event, the plaintiff did not appeal

the district court's application of the federal *de minimus* doctrine to his California state-law

claims. The Ninth Circuit, therefore, did not evaluate the propriety of applying the federal *de minimus* doctrine to state-law wage claims. *Corbin*, 821 F.3d at 1081 n.11. This is crucial because, as noted, Oregon law differs significantly from the FLSA in that it requires each employee to be compensated for every hour worked and Defendant has not pointed to any provision of Oregon law that permits an employer to fail to pay an employee for all of the time worked particularly when, as here, an employer has captured the exact amount of time an employee has worked during a shift.

Even if the *de minimus* doctrine applied to Oregon wage claims, the Court concludes Defendant has not satisfied the *Lindow* requirements. Specifically, the record does not reflect any "practical administrative difficulty in recording the additional time." In fact, it is undisputed that Defendant records all associates' exact time worked. Secondly, the record reflects that the aggregate time the putative class worked and was not paid was significant and, according to Plaintiff's data, amounted to a net loss to associates of $294,405.31. Finally, the uncompensated additional work was regular: it was the result of Defendant's regular and consistent rounding practice that happened every shift throughout the putative class period.

The Court concludes that in the absence of persuasive authority that Oregon has adopted the *de minimus* doctrine and because Defendant fails, in any event, to establish that it satisfied the *Lindow* requirements, the *de minimus* doctrine does not apply here. Accordingly, the Court denies Defendant's Motion for Partial Summary Judgment as to the issue of the propriety of rounding and grants Plaintiff's Cross-Motion for Partial Summary Judgment on that issue.

## IV.    Willfulness

It is not entirely clear from Plaintiff's Complaint that Plaintiff seeks penalty wages for her claims arising from Defendant's rounding policy. Plaintiff, however, states in her Motion for

Partial Summary Judgment that the Court should hold that Defendant's "rounding policy is not authorized by Oregon law, and that plaintiff and the class members are entitled to recover . . . *penalties* as a result of time lost to that rounding policy," indicating that Plaintiff intends to seek penalty wages for those claims. Pl. Mot. for Summ. J. at 3 (emphasis added). Defendant asserts in its Motion that "there is no possibility that [Defendant's] rounding policy should be deemed 'willful' under Oregon law." Def. Mot. for Summ. J. at 19. Plaintiff contends in her Response to Defendant's Motion that Defendant's violations were willful.

### A.    The Law

Oregon Revised Statute § 652.150(1) provides any employer who "willfully fails to pay any wages or compensation of any employee" must pay a penalty for nonpayment. Plaintiff has the burden to prove willful conduct by the employer. *State ex rel. Nilsen v. Lee*, 251 Or. 284, 294 (1968).

Although § 652.150 does not define willful, "[t]he word willful has a particular meaning under Oregon law." *Nance v. May Trucking Co.*, No. 3:12-CV-01655-HZ, 2014 WL 2113094, at *4 (May 20, 2014). Specifically,

> [i]n civil cases the word wilful, [*sic*] as ordinarily used in courts of law, does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally. It amounts to nothing more than this:  That the person knows what he is doing, intends to do what he is doing, and is a free agent.

*Id.* (quoting *Sabin v. Willamette–Western Corp.*, 276 Or. 1083, 1093 (1976)). "An employer, then, willfully fails to pay wages owed at termination only if it is 'fully aware of [its] obligation to do so' but nonetheless consciously and voluntarily decides not fulfill that obligation." *Id.*, at *5 (quoting *Wilson v. Smurfit Newsprint Corp.*, 197 Or. App. 648, 660 (2005)). The definition of

willful "excludes the individual who does not know that his employee has left his employ or who has made an unintentional miscalculation." *Wilson,* 197 Or. App. at 660 (quotation omitted).

Oregon courts have held "'[a]n employer acts willfully if, having the financial ability to pay wages which he knows he owes, fails to pay them. The statute was not intended to impose liability where the employer's refusal to pay wages is based upon a *bona fide* belief that he is not obligated to pay them.'" *Wilson,* 197 Or. App. at 661 (quoting *Nilsen*, 251 Or. at 293). In addition, "an employer lacks knowledge, and therefore does not act willfully, if it has a good faith belief that one of the elements necessary to trigger the obligation to pay wages owed at termination is lacking." *Wilson,* 197 Or. App. at 661 (citing *Hekker v. Sabre Constr. Co.,* 265 Or. 552, 561 (1973)). These cases

> establish that an action is willful if it is fully knowing, intentional, and voluntary. Clearly, a malicious action or one taken in bad faith qualifies. Equally as clearly, an employer does not act willfully if it acts without fully knowing that the historical circumstances triggering the obligation have occurred (for example, that the employee has quit) or if it acts based on an innocent miscalculation that is not careless.

*Wilson*, 197 Or. App. at 662–63.

**B.    Analysis**

Defendant contends there is not any basis under which this Court could conclude its rounding policy resulted in a willful failure to pay Plaintiff's wages. Specifically, Defendant asserts it was not "fully aware" of the obligation to pay the wages at issue because the only Oregon case law addressing rounding policies similar to Defendant's, *Du Ju,* expressly approved of them, and, at the time of Defendant's Motion, two courts outside of Oregon had expressly approved of Defendant's rounding policies: *Utne* and the trial court in *Camp.* Defendant asserts it had a *bona fide* belief that its rounding policy was permissible under Oregon law and, therefore, it did not willfully fail to pay wages within the meaning of § 652.150.

18 – OPINION & ORDER

Plaintiff asserts Defendant misunderstands the meaning of willfulness under Oregon's wage-and-hour laws. Plaintiff asserts "willful" within the context of Oregon wage-and-hour law does not mean intentionally violating clear law, rather it focuses on whether the employer knew the historical facts that ultimately gave rise to liability. *See Wilson*, 197 Or. App. at 662-63. Plaintiff contends, therefore, that mistakes of law are "willful" for the purposes of wage-and-hour law. Defendant, in turn, contends a reasonable mistake of law or lack of legal clarity defeats a finding of willfulness.

Whether a mistake of law can preclude a finding of willfulness is dependent on the circumstances. For example, in *Nilsen* the defendants failed to pay wages owed at termination based on the erroneous belief that they were not liable to pay wages as a matter of law because they were not actual employers, but merely agents of a corporate employer. The court held penalty wages under those circumstances were not appropriate because "ORS 652.150 authorizes the imposition of a penalty only if the employer willfully fails to pay his employee's wages. . . . The statute was not intended to impose liability where the employer's refusal to pay wages is based upon a *bona fide* belief that he is not obligated to pay them." *Nilsen*, 251 Or. at 293. Similarly, in *Hekker v. Sabre Construction Company*, 265 Or. 552 (1973), the issue was whether the employer paid all of the plaintiff's commissions pursuant to the terms of an employment contract. The court found the employment contract was ambiguous, construed the contract in the plaintiff's favor, and denied penalty wages on the basis that the plaintiff failed to show the failure to pay was willful because the "defendant's failure to pay plaintiff his commissions was based on a *bona fide* belief that no commissions were due under the terms of the employment agreements." 265 Or. at 561.

The Oregon Supreme Court reached the opposite conclusion regarding a mistake of law in *Young v. State*, 340 Or. 401 (2006). In *Young* the plaintiff filed a putative class action in Oregon state court on behalf of himself and other state employees to whom the state failed to pay overtime between 1995 and 1997. *Young v. State*, 195 Or. App. 31 (2004), *reversed and remanded*, 340 Or. 401 (2006). The case arose as a result of an amendment to Oregon's overtime compensation law. Specifically, before 1995, Oregon Revised Statute § 279.340 required payment of overtime compensation only to employees of "a county, municipality, municipal corporation, school district or subdivision." O.R.S. § 279.340 (1994). At the same time Oregon Revised Statute § 279.342(5)(a) exempted employees of those same entities "whose employment was 'executive, administrative, supervisory or professional' from the requirements of the statute." *Young*, 195 Or. App. at 35. In 1995 the Oregon legislature amended O.R.S. § 279.340 to extend the requirement to pay overtime to all public employers, including the state. The legislature, however, did not make a comparable amendment to O.R.S. § 279.342(5)(a). As a result, between 1995 and 1997 (when § 279.342(5)(a) was amended), there was no statutory provision that exempted "white collar" state employees from the right to overtime compensation. The plaintiff, a white collar state employee who worked overtime during the relevant period, asserted the unambiguous language of the statutes between 1995 and 1997 entitled him to overtime compensation. The defendant asserted the failure to amend § 279.342(5)(a) was "a legislative drafting mistake that the court should ignore." *Young*, 195 Or. App. at 35. The trial court agreed with the defendant and decided the case in defendant's favor. The Oregon Court of Appeals found the statutes were unambiguous and the plaintiff was entitled to overtime, therefore, the court reversed and remanded the matter to the trial court. On remand the trial court

certified the case as a class action and held, among other things, that only plaintiffs whose

employment terminated after January 26, 2000,[5] were entitled to penalty wages under O.R.S.

§ 652.150. The trial court reasoned based on an affidavit by a state administrator that "until [the

appellate] court ruled otherwise, the state had operated under a good faith belief that it did not

owe any overtime compensation." *Young,* 195 Or. App. at 41. The plaintiff appealed. On appeal

the court noted the initial question was "whether plaintiffs proved that the state knew that it was

obligated to pay overtime to these plaintiffs." *Id*. at 42. The court reviewed various Oregon cases

discussing willfulness under Oregon wage-and-hour law and concluded that in order to be willful

an employer "must know it owes the obligation and intend not to comply with the obligation."

*Id*. at 44. Ultimately, the court concluded the state administrator's affidavit indicated the state

"was not actually aware of this obligation until [the] court's decision," accordingly, the "state

should be charged with knowledge of its obligation to pay overtime to its 'white collar'

employees [only] after" the Court of Appeals issued its decision reversing the trial court on

June 2, 1999. Thus, the Court of Appeals concluded only plaintiffs whose employment

terminated after June 2, 1999, were entitled to penalty wages pursuant to § 652.150. *Id.* The

Oregon Supreme Court accepted the plaintiffs' petition for review and reversed the Court of

Appeals. In particular, the Oregon Supreme Court noted "the meaning of the statutes that the

legislature enacted in 1995 was unequivocally evident to anyone who could read them" and

found the statutes "were available to the state executive branch." *Young*, 340 Or. at 409. The

court, therefore, concluded "the state . . . was fairly chargeable with knowledge of those statutes .

. . [and] once the legislature enacted the changes to former ORS 279.340(1) in 1995, the state

---

[5] January 26, 2000, is the date the Oregon Court of Appeals issued its judgment reversing and
remanding the matter to the trial court.

could not assert a 'bona fide belief' that it had no obligation to pay overtime to its white-collar employees." *Id.* (citing *Taylor v. Werner Enterprises, Inc.*, 329 Or. 461, 470 (1999))("The question . . . is whether [the employer] had, or can be imputed to have had, a level of awareness of its obligation to pay plaintiff such that its failure to pay was 'willful.'"). Accordingly, the court reversed the Court of Appeals and found all of the plaintiffs were entitled to penalty wages under O.R.S. § 652.150.

These cases taken together indicate that in circumstances when the law is unclear to the extent that an employer does not reasonably have a sufficient level of awareness of its obligation to pay wages, its failure to do so is not "willful." This conclusion is further supported by cases applying the standard adopted by Oregon in *Nilsen*. Specifically, in *Nilsen* the Oregon Supreme Court relied on *Davis v. Morris*, 37 Cal.App.2d 269 (1940), for the proposition that O.R.S. § 652.150 "was not intended to impose liability where the employer's refusal to pay wages is based upon a *bona fide* belief that he is not obligated to pay them." 251 Or. at 293. In *Barnhill v. Robert Saunders & Company*, 125 Cal.App.3d 1 (1981) the court relied on *Davis* when it concluded the employer was not liable for penalty wages under California's version of § 652.150 because although the court concluded the defendant was liable for refusing to pay certain of the plaintiff's wages, "the state of law . . . was not clear" at the time the defendant did not pay the wages at issue. 125 Cal.App.3d at 8. The court noted "several Courts of Appeal had expressed the view that setoffs against employees' wages were proper" and suggested "an employer had at least some right of setoff." *Id.* (citations omitted). The court concluded "given that uncertainty, [the employer] should not be penalized for believing that setoff was proper and payment of wages not required. Accordingly, [the employer's] attempt to exercise a right to

setoff was not willful nonpayment of wages within the meaning of Labor Code . . ., and the imposition of penalties was inappropriate." *Id.*

Here the state of the law regarding the permissibility of Home Depot's rounding program is uncertain. As Defendant noted, the court in *Du Ju* approved a similar rounding program and two courts in California had approved Defendant's specific rounding program. Accordingly, although the Court concludes Oregon does not permit rounding, the Court also concludes the state of the law was sufficiently uncertain that Defendant should not be penalized for reasonably believing that its rounding program was permissible in Oregon. Thus, Defendant's failure to pay Plaintiff's wages as a result of the rounding program was not "willful" within the meaning of O.R.S. § 652.150. Accordingly, the Court grants Defendant's Motion for Partial Summary Judgment as to the issue of penalty wages for Plaintiff's claims based on rounding and denies Plaintiff's Motion for Partial Summary Judgment on the issue of penalty wages for Plaintiff's claims based on rounding.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Partial Summary Judgment [52] and GRANTS IN PART and DENIES IN PART Plaintiff's Cross-motion for Partial Summary Judgment [56].

IT IS SO ORDERED.

DATED:    November 29, 2022    .



MARCO A. HERNANDEZ
United States District Judge