IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHLEEN EISELE,                                     No. 3:20-cv-1740-AB

              Plaintiff,                            OPINION & ORDER

    v.

HOME DEPOT U.S.A., INC., a Delaware
corporation
              Defendant.

Jon M. Egan
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009

Jim W. Vogele
812 N.W. 17th Avenue
Portland, OR 97209

       Attorneys for Plaintiff

1 – OPINION & ORDER

James M. Barrett
E.A. Meg Barankin
Ogletree Deakins
222 S.W. Columbia Street
Suite 1500
Portland, OR 97201

Evan Reed Moses
Ogletree Deakins
400 South Hope Street, Suite 1200
Los Angeles, CA 90071

      Attorneys for Defendant

BAGGIO, Judge:

This matter is before the Court on Defendant Home Depot's Motion for Summary Judgment. ECF 146. For the following reasons the Court grants in part and denies in part Defendant's Motion.

## BACKGROUND

On August 28, 2020, Kathleen Eisele filed a class action complaint against Home Depot U.S.A., Inc., in Multnomah County Circuit Court asserting claims for failure to pay wages when due in violation of Oregon Revised Statute § 652.120 and failure to pay wages on termination in violation of Oregon Revised Statute § 652.140. *Eisele I*, 3:20-cv-01740-HZ. Plaintiff alleged Defendant "rounded plaintiff's and other class members' time punches, resulting in a consistent net underpayment to them" and "failed to pay plaintiff and the class members all earned and unpaid wages (including vacation pay) within the statutory deadline to do so upon termination of their employment." *Eisele I,* Compl. ¶¶ 5-6. Defendant removed the matter to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A).

On July 22, 2022, the parties filed cross-motions for summary judgment as to whether rounding is permissible under Oregon law.

2 – OPINION & ORDER

On November 29, 2022, the Court issued an Opinion and Order in which it concluded Defendant's rounding practice was not authorized under Oregon law, that any resulting net underpayment to hourly employees could not be excused as *de minimis*, and that Defendant had not willfully violated the law. *Eisele v. Home Depot*, 643 F. Supp. 3d 1175-76, 1180 (D. Or. 2022).

On January 16, 2023, Defendant stopped its practice of rounding nationwide. On February 23, 2023, Plaintiff moved for class certification in *Eisele I*. On May 5, 2023, Defendant "paid each of the putative class members . . . all net wages that were allegedly due as a result of Defendant's rounding practices" plus interest. *Eisele I*, Wilson Decl., ECF 86, at ¶ 3. At the May 17, 2023, hearing on Plaintiff's motion for class certification Defendant, relying on its "true-up" payments, asserted that Plaintiff's motion for class certification was moot. Plaintiff acknowledged receipt of the payments, but did not concede that putative class members had been properly compensated or that the true-up payments had been properly calculated. The Court permitted Plaintiff time to review the data that Defendant used to make the true-up payments to determine whether class certification was moot.

On August 24, 2023, the Court struck Plaintiff's Motion to Certify the Class.

On April 16, 2024, Plaintiff filed a class action complaint against Defendant in Multnomah County Circuit Court (*Eisele II*) alleging that when Defendant made the true-up payments in *Eisele I*, it improperly included prejudgment interest as wages on the putative class members' W-2 forms rather than issuing them form 1099s for the prejudgment interest.

Defendant removed *Eisele II* to this Court on the basis of federal-question and CAFA jurisdiction. On May 25, 2024, Plaintiff moved to remand *Eisele II*. On September 12, 2024, the Court denied the Motion to Remand and consolidated *Eisele I* and *II*.

On October 10, 2024, Plaintiff filed a First Amended Class Action Complaint ("FAC") in *Eisele II* which she alleged Defendant wrongfully included interest on back wages on Plaintiff and the putative class members' W-2 forms. Plaintiff brought claims for wrongful deduction in violation of Oregon Revised Statute § 652.610; for filing a fraudulent federal information return in violation of 26 U.S.C. § 7434; and for declaratory, injunctive, and "further equitable" relief.

On November 1, 2024, Defendant moved to dismiss the *Eisele II* FAC on the grounds that (1) Plaintiff alleged the wrong kind of "misreporting" to state a claim for violation of § 7434 and (2) § 652.610 only applies to unauthorized deductions from wages and Plaintiff specifically alleged the interest component of the true-up payment was not wages, therefore, Plaintiff did not state a claim for violation of § 652.610. On February 28, 2025, the Court granted Defendant's Motion and dismissed *Eisele II*.

Defendant now moves for summary judgment in *Eisele I* on all of Plaintiff's claims.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28

(9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendant moves for summary judgment on the grounds that it has paid Plaintiff and the putative class members all sums lost due to Defendant's rounding, it has discharged its debt, and the individual and putative class claims are moot. Plaintiff opposes Defendant's Motion on the grounds that the Court cannot constitutionally decide the merits of the claims of the absent class members; Defendant has not established that it paid Plaintiff and putative class members all of the money they are due; and even if Defendant had paid all sums due, payment does not moot the claims.

## I.    Evidentiary Issue

Defendant relies on the Declarations of Kimberley Grier, Defendant's senior manager of human resources operations, and Julie Green, president of CPT, the class action administrator used by Defendant to locate and pay some of the putative class plaintiffs, to support its Motion.

5 – OPINION & ORDER

Grier testifies that on May 5, 2023, Defendant paid each of the putative class members "all net wages that were allegedly due[.]" Grier Decl., ECF 149, ¶ 3. "All employees who were paid less on net under rounding than the time reflected in their time punches during their employment during the applicable statute of limitations while rounding was in effect received payment for the alleged net underpayment plus interest." *Id*. Grier notes that Defendant issued payments to putative class members who were employed by Defendant at the time of the payments and CPT issued the payments to Plaintiff and putative class members who were no longer employed by Defendant. *Id.,* ¶ 4. Defendant paid a total of $969,698 for alleged net underpayments and interest. *Id.* ¶ 5. Defendant "issued the payments to the current employees by depositing the payments directly into the employees' bank accounts" and paid employees who had not set up direct deposit "by mailing a check to those employees at the address those employees had requested that [Defendant] use to pay their wages." *Id.* ¶¶ 7-8. Grier's Declaration has two exhibits. The first shows the amount paid to each class member and breaks each individual payment down into the amount of wages paid, interest paid, and the total payment. *Id.*, Ex. 1. The second shows the amount of payment, payment date, type of payment, and store location for Plaintiff and each putative plaintiff. *Id.*, Ex. 2. Both exhibits are anonymized.

Green testifies that she personally worked on the Defendant's payment program. Green describes the process that CPT employed to locate former employees and states that on May 5, 2023, CPT mailed checks to 15,009 former employees. Green Decl., ECF 148, ¶ 8. Exhibit 1 to Green's Declaration contains a list of each of these employees and the amount of the total payment for each. *Id.* CPT "maintained a tollfree number (provided at the top of the check) with an interactive voice response system and live support representatives during normal business

6 – OPINION & ORDER

hours. . . . The dedicated phone number remained active for 120 days after the disbursement." *Id.* ¶ 10. Checks that were returned undeliverable were skip traced and remailed if a new address was found. In addition, CPT "has maintained a continuous process of reissuing returned checks [and] . . . reissued checks to employees who contacted CPT Group directly regarding the status of their checks." *Id.* ¶ 11. As of September 26, 2025, 6,697 former employees have cashed their checks. *Id.* ¶ 12. Plaintiff cashed her check on January 19, 2024. *Id.* ¶ 13.

Plaintiff asserts that these Declarations are inadmissible hearsay and do not qualify as summary exhibits under Federal Rule of Evidence 1006.[1] Defendant notes that Federal Rule of Evidence 802 provides "[h]earsay is not admissible unless" a federal statute, the rules of evidence, or "other rules prescribed by the Supreme Court" provide otherwise. Federal Rule of Civil Procedure 56(c)(4) expressly permits proof by declaration in summary judgment motions when the declaration is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated."

Both Grier and Green testify that they have personal knowledge of the facts they set out in their Declarations and there is no indication that either is not competent to testify as to the matters stated. In addition, Plaintiff does not appear to dispute their testimony as to the number or identities of the putative plaintiffs, their testimony as to the amounts that Defendant paid Plaintiff and putative plaintiffs, or their testimony regarding the manner in which Defendant and

---

[1] Rule 1006 provides in pertinent part: "The court may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings . . . that cannot be conveniently examined in court." "The proponent must make the underlying originals or duplicates available for examination or copying . . . by other parties." Fed. R. Evid.1006(a)-(b).

CPT paid Plaintiff and putative plaintiffs.[2] The Court, therefore, concludes the Declarations are not inadmissible hearsay.

## II.    Constitutional Issue

Relying on *Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984) and *Schwarzschild v. Tse*, 69 F.3d 293 (9th Cir. 1995), Plaintiff asserts that Defendant cannot seek summary judgment on the merits of any absent class member without giving absent class members notice and the opportunity to opt out, therefore, if "summary judgment is decided prior to class certification, it can bind only the named plaintiff." Pl. Resp., ECF 152, at 18.

Defendant agrees that *Wright* and *Schwarzschild* are the leading Ninth Circuit cases on the one-way intervention doctrine, but asserts that doctrine only prohibits a plaintiff from intervening in a class action after a decision favoring the class has occurred, it does not bar a defendant from seeking summary judgment prior to class certification or class notice.

The one-way intervention doctrine prevents a plaintiff from intervening in a class action "after an adjudication favoring the class ha[s] taken place." *Schwarzschild*, 69 F.3d at 295. "Such intervention is termed 'one way' because the plaintiff would not otherwise be bound by an adjudication in favor of the defendant" occurring at that point in the litigation. *Id.* (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 759 (3d Cir. 1974) (en banc)). "The one-way intervention rule exists to protect defendants from two ills – continued exposure to lawsuits even after a favorable judgment and the risk imbalance in a system that allows non-mutual estoppel." *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-5693 PSG (RZX), 2015 WL 4776932, at *4 (C.D. Cal. May 27, 2015) (citing *Schwarzschild*, 69 F.3d at 297) ("the strongest argument for

---

[2] The court did not rely on the charts attached to the Declarations for the truth of the sufficiency of any payment specific to any putative plaintiff.

[forbidding] post-judgment class certification is that pre-judgment certification and notice to the class are necessary to protect the defendant from future suits by potential members of the class") (quotation omitted); *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 545, 547 (1974) (one-way intervention "aroused considerable criticism on the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one")). Thus, "district courts generally do not grant summary judgment on the merits of a class action until the class has been properly certified and notified." *Schwarzschild,* 69 F.3d at 295. Nevertheless, the Ninth Circuit has expressly recognized that "[n]either Fed. R. Civ. P. 23 nor due process . . . requires that the district court rule on class certification before granting or denying a motion for summary judgment." *Wright,* 742 F.2d at 545-46. Because the one-way intervention rule is designed to protect defendants, courts have held that defendants can waive its protections. *See Wright*, 742 F.2d at 544 (holding that the "proper approach" to the one-way intervention rule is to permit "a defendant [to] waive the protection afforded by an early ruling on class certification"); *Gessele v. Jack in the Box, Inc*., No. 3:10–CV–960–ST, 2012 WL 3686274, at *2 (D. Or. Aug. 24, 2012) ("only the defendant . . . can waive the right to class certification prior to dispositive motions"). In the Ninth Circuit, courts have permitted defendants to move for a judgment on the merits prior to class certification on the basis that "in doing so, defendants affirmatively accept that the resulting judgment will only bind the parties at bar and will leave defendants vulnerable to additional lawsuits." *Eddie, Inc*, 2015 WL 4776932, at *4 (citing *Wright,* 742 F.2d at 544) ("[w]here the defendant assumes the risk that summary judgment in his favor will have only stare decisis effect on the members of the putative class, it is within the discretion of the district court to rule on the summary judgment motion first")); *Weir v. Joly*, No. CV-10-898-HZ, 2011 WL 6043024, at *1 (D. Or. Dec. 2, 2011) ("Taken

9 – OPINION & ORDER

together, [*Wright* and *Schwarzchild* indicate that] a defendant may request a ruling . . . on its summary judgment prior to class certification. Here, defendants ask for a ruling on their MSJ, knowing that class certification may occur later. In doing so, defendants have accepted that the ruling would only apply to . . . the named plaintiff.").

In summary, there is no constitutional impediment to deciding Defendant's Motion, but the Court recognizes that in moving for summary judgment before class certification has occurred, Defendant has assumed the risk that summary judgment in its favor will have only stare decisis effect on the putative plaintiffs. *See Wright*, 742 F.2d at 544 (If a defendant obtains summary judgment prior to class certification "defendants have prevailed only against the named plaintiffs . . . [t]he judgment will not be res judicata as to other . . . members of any class that may be certified.").

**III.     Penalty Wages, Attorney Fees, and Costs**

Plaintiff asserts that the true-up payments do not moot this matter because the true-up payments do not cover, among other things, penalty wages, attorney fees, and costs. The Court finds that these items do not prevent a finding of mootness.

Defendant points out that it specifically reserved the question of attorney fees and costs in its Motion. In addition, courts that have found that complete payment of wages moots wage actions have done so even when the issue of attorney fees and costs remains outstanding. *See, e.g., Rueling v. MOBIT LLC*, No. CV-18-00568-PHX-BSB, 2018 WL 3159726, at *5 (D. Ariz. June 28, 2018). Accordingly, the fact that attorney fees and costs remains outstanding does not prevent a finding of mootness.

With respect to penalty wages, in *Eisele I* the Court held at summary judgment that Plaintiff and putative class members are not entitled to penalty wages because Defendant did not

10 – OPINION & ORDER

act willfully within the meaning of Oregon Revised Statute § 652.150(1). *Eisele v. Home Depot U.S.A., Inc.*, 643 F. Supp. 3d 1166, 1180 (D. Or. 2022). Plaintiff's request for penalty wages has, therefore, been resolved and the Court cannot provide further relief to Plaintiff on this aspect of her claims. Accordingly, the Court finds this aspect of Plaintiff's claims is moot.

## IV.     Payments Generally

Plaintiff asserts that Defendant is not entitled to summary judgment because Defendant made its true-up payments via direct deposits and checks, but unsolicited direct deposits and uncashed checks cannot moot Plaintiff's or putative plaintiffs' claims.

### A.     Unsolicited Direct Deposits

Relying on *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016); *Chen v. Allstate Ins. Co.*, 819 F.3d 1136 (9th Cir. 2016); and *O'Neal v. America's Best Tire*, 2016 WL 3087296 (D. Ariz. June 2, 2016), Plaintiff asserts that unsolicited direct deposits into the accounts of putative plaintiffs who were employed by Defendant at the time of payment do not constitute acceptance, therefore, they are not payment for purposes of mootness.

In *Campbell-Ewald* the plaintiff filed a class action complaint alleging violations of the TCPA. 136 S. Ct. at 667. The defendant filed an offer of judgment for the named plaintiff's costs, personal treble damages, and injunctive relief to settle the named plaintiff's individual claim. *Id.* at 667-78. The plaintiff did not accept the offer of judgment and it expired. *Id.* at 668. The Court rejected the defendant's argument that the expired, unaccepted offer of judgment satisfied the plaintiff's claims and rendered his case moot. *Id.* at 670 (the defendant's "settlement bid and Rule 68 offer of judgment, once rejected, had no continuing efficacy") (citations omitted). Unlike here, the defendant in *Campbell-Ewald,* made only a rejected settlement offer and did not make any payment to the plaintiff to satisfy his claims.

11 – OPINION & ORDER

In *Chen* the defendant deposited $20,000 in an escrow account for the plaintiff's individual damages pending entry of a final court order or judgment that "direct[ed] the escrow agent to pay the tendered funds to the plaintiff . . . and dismiss[ed] this action as moot." 819 F.3d at 1144. The Ninth Circuit noted that "a claim becomes moot when a plaintiff *actually receives* complete relief on that claim, not merely when that relief is offered or tendered." *Id.* at 1138 (emphasis in original). The court held that because the defendant had deposited funds in the escrow account pending entry of a final court order or judgment "directing the escrow agent to pay the tendered funds to the plaintiff . . . and dismissing this action as moot," the defendant had not "unconditionally relinquished its interest in the $20,000 to [the plaintiff]" and the deposit, therefore, did not moot the plaintiff's individual claim for damages. *Id.* at 1146. Here, unlike in *Chen*, the defendant directly deposited the funds into current employees' bank accounts without restrictions or conditions. Thus, it relinquished its interest in those funds to the current employee putative plaintiffs. *Chen*, therefore, does not support Plaintiff's assertion that unsolicited direct deposits cannot moot claims here.

In *O'Neal* the plaintiffs brought a putative class action for violation of the Fair Labor Standards Act ("FLSA") against several defendants. The "TD Defendants" admitted they were liable for unpaid overtime compensation and liquidated damages, but moved for summary judgment on the basis that they issued checks to the plaintiffs in an amount equal to this liability and that payment mooted the plaintiffs' claims. 2016 WL 3087296, at *2. The plaintiffs asserted that their claims were not moot because they had not "accepted, cashed, nor deposited the checks." *Id.* The court found that the ordinary meaning of the term "payment" is "'[p]erformance of an obligation by the delivery of money or some other valuable thing *accepted* in partial or full discharge of the obligation.'" *Id.* (quoting Black's Law Dictionary (2014 ed.)) (emphasis in

12 – OPINION & ORDER

*O'Neal*). The court denied summary judgment finding that because the plaintiffs had "not accepted the checks tendered by [the defendants] . . . the parties remain[ed] adverse and retained the same stake in the litigation that they had at the outset." *Id*. at \*3 (citation omitted).

Here, however, the putative plaintiffs received the direct deposits and there is no evidence that any putative plaintiff returned the funds or asked Defendant to remove the money from their account. These cases, therefore, do not establish that as a matter of law unsolicited direct deposits cannot moot the claims in this action. Under circumstances similar to those here, courts have held a claim may be mooted. For example, in *Rueling v. MOBIT LLC*, No. CV-18-00568-PHX-BSB, 2018 WL 3159726 (D. Ariz. June 28, 2018), the plaintiff filed an action seeking unpaid minimum wage compensation, liquidated damages, and statutory penalties for the defendants' alleged violations of the FLSA and Arizona wage and hour law. The defendant wired $5,000 to the plaintiff's bank account for payment of the plaintiff's FLSA claim and asked the plaintiff to dismiss the claim. The plaintiff refused and the defendant moved to dismiss the FLSA claim on the basis that it had paid the plaintiff in full and the claim was, therefore, moot. The plaintiff asserted that the $5,000 payment was a "legal nullity" and that her claims were not moot because "Defendants would not take 'no' for an answer." *Id*., at \*5. Plaintiff, however, did not dispute the defendant's calculation of her FLSA damages; return the funds to the defendant; or argue that "if th[e] matter were to proceed, and she prevailed on her FLSA claim, she could receive an award for damages that would exceed the amount of the unrestricted funds deposited in her account." *Id.* The court found that $5,000 satisfied the FLSA claim, the plaintiff did not establish that the court could award her any additional relief on her FLSA claim, and that the plaintiff's FLSA claim was moot "because there [was] no longer a live case or controversy regarding this claim." *Id.*

13 – OPINION & ORDER

The Court concludes that Plaintiff has not established as a matter of law that unsolicited direct deposits cannot moot claims here.

### B.    Uncashed Checks

Plaintiff asserts that uncashed checks do not moot a claim because an unnegotiated check is not payment.[3]

In *Harper v. Charter Commc'ns, LLC,* No. 219CV00902WBSDMC, 2024 WL 2115733 (E.D. Cal. May 9, 2024), the plaintiffs brought an action asserting various labor code violations related to the "unlawful calculation, deduction, and payment of commission wages." *Id.*, at *1. The court denied the plaintiffs' motion for partial summary judgment. The plaintiffs moved for reconsideration based in part on their proposition that the $750 checks that the defendant mailed the plaintiffs to satisfy their claims did not constitute full satisfaction because the plaintiffs refused to cash the checks. The court distinguished the facts from those in *Chen* noting that in that case "the release of escrow funds was conditioned on a district court dismissing a suit in full," but in *Harper,* the "plaintiffs' ability to draw on defendant's checks . . . was conditional on nothing whatsoever. Plaintiffs' unilateral refusal to cash the checks that they received is not a judicial concern." *Id.*

Similarly, in *Kouba v. Renzenberger, Inc*., the plaintiff brought an action for unpaid overtime in violation of the FLSA. The defendant tendered a check to the plaintiff for the amount of his overtime wages. The plaintiff did not cash the check "because he did not want to waive his right for a jury to decide the facts." No. CIV 10-159 TUC FRZ, 2012 WL 7149410, at *1 (D. Ariz. July 6, 2012), report and recommendation adopted, No. CV 10-159-TUC-FRZ, 2013

---

[3] Plaintiff nominally asserts that returned checks also cannot moot a claim but there is no evidence that Plaintiff or any putative plaintiff returned a check. The Court, therefore, need not address this argument

WL 593458 (D. Ariz. Feb. 7, 2013). The defendant moved for summary judgment on the overtime claim on the basis that it had tendered to the plaintiff the maximum amount of damages that he could collect. The court concluded that the plaintiff's claim was moot even though he refused to cash the check because "[e]ven if [the plaintiff] won at trial, the court would be unable to award him anything more than he [had] already been offered" and his "claim was no longer 'capable of legal redress.'" *Id.,* at *2 (quoting *Schmier v. U.S. Court of Appeals for Ninth Circuit,* 279 F.3d 817, 820–21 (9th Cir. 2002)). The court did not find the plaintiff's assertion that his rejection of the defendant's offer by refusing to cash the check preserved his "right to a trial on the merits" to be persuasive because the court "has no jurisdiction over a claim that can no longer be redressed." *Id.* (citing *All. to End Repression v. City of Chicago,* 820 F.2d 873, 878 (7th Cir. 1987) ("Our conclusion that this case is not justiciable answers a question . . . whether a plaintiff who is offered all the relief he demands may refuse the offer and go to trial. The answer is no.")).

In *Ballin v. Russ Bassett Corp. & Insperity PEO Servs.*, No. 17-CV-3981 PSG, 2017 WL 10527368 (C.D. Cal. Dec. 6, 2017), the plaintiff submitted notice of a claim to the California Labor & Workforce Development Agency seeking payment from the defendant for an alleged violation of the California Labor Code. In response to the plaintiff's notice, the defendant issued two checks to the plaintiff totaling $39,000. The plaintiff did not cash the checks and filed a putative class action asserting claims for violations of the FLSA and the California Labor Code. The defendant moved for summary judgment on six of the plaintiff's claims contending that the payment of $39,000 provided complete relief on those claims and, therefore, those claims were moot. *Id.*, at *2. The plaintiff did not dispute that the amount the defendants paid was equal to or greater than her individual claims, but asserted that "tender remain[ed]

15 – OPINION & ORDER

imperfect" because she did not cash or deposit the check. *Id.* The court rejected that argument and held that "for the purposes of analyzing whether Plaintiff's claims have been extinguished, Defendant's unconditional payment in the form of a check to Plaintiff constitutes tender." *Id.*, at *3. The court concluded that the plaintiff's "damages [had] been paid at the maximum amount to which she may be entitled; her injuries [had] been fully redressed; [and] . . . she lack[ed] standing to pursue her claims." *Id.*, at *4. The court, therefore, granted the defendant's motion for summary judgment.

The Court finds the reasoning of these cases persuasive and concludes that Plaintiff has not established that an uncashed or undeposited check cannot as a matter of law moot claims here.

## V.     Checks Uncashed by Putative Plaintiffs

Plaintiff points out that the evidence offered by Defendant establishes that 8,312 former employees and 19 current employees have not cashed the checks sent by Defendant. Plaintiff asserts that the uncashed checks cannot moot the claims of these putative plaintiffs. Defendant disagrees and cites several cases in support of its assertion that tender by check of the full amount of possible damages is sufficient to moot a claim even when the plaintiff does not cash the check. In those cases, however, it was undisputed that the plaintiff had received the check and affirmatively declined to cash it. *See, e.g., Kouba,* 2012 WL 7149410, at *1 (The plaintiff "acknowledged receiving the . . . check[] from [the defendant, but] . . . did not cash the . . . check . . . because he did not want to waive his right for a jury to decide the facts."); *Ballin,* 2017 WL 10527368, at *1 (The defendants sent the plaintiff's counsel two checks, made payable to Plaintiff, totaling $39,000, an amount that was "equal or greater than" the plaintiff's claims. The plaintiff, however, refused to cash the check.).

16 – OPINION & ORDER

Green testifies in her Declaration that CPT mailed checks to 15,009 former employees and "[a]ny checks that were returned undeliverable were skip traced and remailed if a new address was found. CPT has maintained a continuous process of reissuing returned checks." Green Decl., ¶¶ 8, 11. Grier testifies in her Declaration that Defendant paid current employees who had not set up direct deposit "by mailing a check to . . . the address[es] [that] those employees had requested [Defendant] use to pay their wages." Grier Decl., ¶ 8.

It is not clear on this record whether the 8,312 putative former employee plaintiffs and 19 current employee putative plaintiffs received the checks sent by Defendant and Defendant cites no case in which a court has concluded that an unreceived payment is sufficient to moot a claim. At best, Defendant has attempted tender of payment to these putative plaintiffs. The Court concludes that the attempted tender to these 8,331 putative plaintiffs is insufficient to moot their claims. The Court, therefore, denies Defendant's Motion as to these putative plaintiffs.

## VI.    FICA Tax

Plaintiff asserts that because Defendant wrongfully withheld FICA taxes from the interest portion of the payments to Plaintiff and 5,621 putative class members, Plaintiff and those putative class members have not been offered all the relief they requested, therefore, Defendant's payments do not moot Plaintiff's claims or the claims of those putative plaintiffs. Defendant responds that it withheld FICA and made the FICA payments to the IRS; it was required to withhold FICA from the interest portion of the true-up payments; and even if Defendant should not have withheld FICA from the interest portion of the true-up payments, Plaintiff cannot pursue underpayment in this action.

The federal tax code provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally

17 – OPINION & ORDER

assessed or collected . . . or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary.

26 U.S.C. § 7422(a). "The IRS administrative claim provisions in 26 U.S.C. § 7422(a) apply broadly to suits seeking tax refunds whatever the source of the cause of action, weighing substance over form." *Schlieker v. United States*, No. 17-CV-01284-KLM, 2019 WL 479791, at *4 (D. Colo. Feb. 7, 2019) (citing *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 9 (2008) (rejecting the plaintiffs' assertion that they could sue "directly under the Tucker Act" for refund of certain taxes noting that because the plaintiffs' "claims are subject to [Internal Revenue] Code provisions, those claims are barred whatever the source of the cause of action.")). Thus, courts have construed § 7422(a) to prohibit suits by employees seeking recovery of funds from employers that were allegedly wrongfully collected from wages even when those actions were not specifically brought as refund actions. *See, e.g., Wiggins v. Jefferson Einstein Hosp.*, No. 24-2095, 2024 WL 5074894, at *2 (3d Cir. Dec. 11, 2024) (finding that the plaintiff's breach of contract claim was preempted by § 7422 because that claim alleged that the defendant wrongfully collected federal taxes from him); *Grier v. Hilton Worldwide Inc.,* No. CV-14-00189-PHX-DLR, 2014 WL 11515700, at *3 (D. Ariz. July 21, 2014) ("Although an employer is liable to the IRS for the payment of taxes required to be withheld, the employer is not liable to the employee for the amount withheld. . . . Instead, those who believe taxes have been improperly withheld may file a claim for a refund." (internal quotations and citations omitted)); *Jones v. Daly Seven, Inc.*, No. 1:12CV510, 2014 WL 12596463, at *5 (M.D.N.C. July 22, 2014), report and recommendation adopted, No. 1:12CV510, 2014 WL 12595213 (M.D.N.C. Sept. 9, 2014), aff'd, 592 F. App'x 226 (4th Cir. 2015) ("Plaintiff's claims for wrongful conversion and breach of contract challenge the tax amount withheld from the total settlement amount; therefore,

18 – OPINION & ORDER

Plaintiff's remedy begins with the Internal Revenue Service and not an action against Defendants."); *Strategic Hous, Fin. Corp. of Travis Cnty v. United States*, 608 F.3d 1317, 1327 (Fed. Cir. 2010) ("the plain meaning of . . . § 7422(a) demonstrated that Congress required a party seeking a tax refund for any reason [to] fil[e] a refund claim with the IRS."); *Strategic Hous. Fin. Corp. v. United States*, 86 Fed. Cl. 518, 544 (Fed. Cl. 2009), *vacated in part on other grounds*, 608 F.3d 1317 (Fed. Cir. 2010) (finding that *Clintwood* "unequivocally concludes that the jurisdictional bar contained in section 7422(a) applies regardless of the underlying characterization of the claim."); *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 68-69 (3d Cir. 2008) (finding that appellant's unjust enrichment claim regarding her employer's wrongful collection of FICA taxes was preempted by § 7422); *Kaucky v. Sw. Airlines Co.*, 109 F.3d 349, 351-52 (7th Cir. 1997) (explaining that a suit brought against an employer for withholding payroll taxes amounts to a suit for a refund under § 7422(a)); *Sigmon v. Sw. Airlines Co.*, 110 F.3d 1200, 1204 (5th Cir. 1997) ("Although the collection may ultimately have been erroneous, the Internal Revenue Code provides the exclusive remedy for the erroneous or illegal collection of taxes[.]"); *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 770 (9th Cir. 1986) ("[S]uits by employees against employers for tax withheld are statutorily barred." (internal quotation omitted)).

Plaintiff asserts that Defendant wrongfully withheld FICA taxes from the interest portion of the true-up payments, but presents no evidence that Plaintiff or putative plaintiffs have filed a claim with the Internal Revenue Service. This portion of Plaintiff's claims is, therefore, barred by § 7422(a) and this Court cannot provide any relief on this aspect of those claims. Accordingly, to the extent that the claims here rely on the allegedly improper withholding of

19 – OPINION & ORDER

FICA tax from the interest portion of the true-up payment, the Court finds the claims are moot and grants Defendant's Motion as to that portion of Plaintiff's claims.

## VII.    Prejudgment Interest

Plaintiff asserts Defendant is not entitled to summary judgment because it has not established that it paid Plaintiff or all putative class members sufficient prejudgment interest. Plaintiff contends that Defendant miscalculated the prejudgment interest due because it began running the interest only after it stopped its rounding practice, but under Oregon law prejudgment interest runs from the date of each payday that Plaintiff and putative plaintiffs were underpaid due to Defendant's rounding practice.

Defendant explains that it calculated prejudgment interest for Plaintiff and putative class members by starting from the earlier of when Plaintiff and the putative plaintiffs' employment with Defendant ended or on January 16, 2023 (the date on which Defendant ended its rounding practice). Defendant asserts that it did so because this was "wholly consistent with the theory of damages and class definition Plaintiff offered to the Court" at oral argument on the 2022 cross-motions for summary judgment. At that hearing Plaintiff agreed that employees could not be members of the putative class unless the employee suffered a net loss from rounding over the course of their employment in the following discussion with the Court:

> THE COURT: -- of course, but when you say individuals who lost money, are you talking about individuals who lost money in the course of a pay period or in the course of a shift or overall, total?
>
> MR. EGAN: If they're owed money as a result of their employment at Home Depot, right, so total, because if – if somebody has experienced both positive and negative rounding over the time they've been there, but at the end of the day, Home Depot has overpaid them, they have no standing. They can't bring a claim for lost wages.

20 – OPINION & ORDER

Tr., ECF 71, at 34. Defendant asserts that because Plaintiff "committed to defining the class and limiting class membership and standing to those . . . employees who experienced a net rounding loss over the course of their employment," it was appropriate to calculate prejudgment interest only after Plaintiff or putative plaintiffs' "course of employment" was completed or the rounding practice ended. Def. Reply, ECF 155, at 9-10.

Plaintiff asserts that the definition of the class for purposes of determining membership and standing do not determine how prejudgment interest is calculated under Oregon law. Plaintiff notes that Oregon Revised Statute § 82.010(1)(a) provides in relevant part: "The rate of interest . . . is nine percent per annum and is payable on . . . (a) [a]ll moneys after they become due." Oregon Revised Statute § 652.120(1) provides: "Every employer shall establish and maintain a regular payday, at which date the employer shall pay all employees the wages due and owing to them." According to Plaintiff, therefore, under Oregon law when a company underpays a worker on payday, interest on that underpayment begins running immediately after that pay date. Plaintiff notes that Defendant's method fails to include all of the interest that accrued between the payday on which the employee was underpaid and either the date on which their employment ended or the date on which Defendant ended its rounding practice. Defendant's method does not comply with either the letter or the purpose of Oregon's prejudgment interest statute.

In *USF Reddaway, Inc. v. Teamsters Union, Loc*. 162 AFL-CIO, 230 F. Supp. 2d 1180 (D. Or. 2001), the plaintiff employed union members pursuant to a collective bargaining agreement ("CBA") that provided union employees were entitled to wage increases if certain conditions were met. *Id.* at 1181. The defendant determined the conditions were not met and its employees were not entitled to a wage increase in 1998. The Union disagreed and the matter

went to arbitration. On January 14, 2000, the arbitrator ruled in favor of the union and ordered

the defendant to pay the wage increase to all employees covered by the CBA "effective March

29, 1998 and each year thereafter during the term of the contract." *Id.* The defendant brought an

action to vacate the arbitration decision. The court denied the motion to vacate and denied the

defendant's request to deny prejudgment interest. The court also denied the defendant's

alternative request that the court should award prejudgment interest starting on January 14, 2000,

reasoning that the defendant "had the use of the Union members' money since March 29, 1998,

and should compensate the Union members for the entire time it wrongfully withheld their

wages." *Id.* at 1183. The court awarded prejudgment interest under Or. Rev. Stat. § 82.010(1)(a)

from March 29, 1998, the date on which the union members should have been paid. *Id.* at 1184.

The Court concludes Defendant has not established that it paid Plaintiff and putative

plaintiffs all prejudgment interest due (*i.e.*, the prejudgment interest that accrued from the

paydays on which they received less wages due to rounding and the date either Defendant ended

its rounding practice or the date applicable to the manner in which their employment ended

under § 652.140(1) or (2)).[4] This portion of Plaintiff's claims is, therefore, not moot.

Accordingly, the Court denies Defendant's Motion as to this aspect of Plaintiff's claims.[5]

## VIII.   Wages Due

Defendant asserts it paid Plaintiff and putative plaintiffs all of the regular wages they

were due and, therefore, this aspect of the claims is moot and Defendant is entitled summary

---

[4] The Court notes that the putative class remains as Plaintiff described it at the hearing. Jennifer Murphy testifies in her Declaration that she calculated interest on the "underpayment or overpayment for each pay period" only "[f]or employees who were net underpaid," which is consistent with the putative class as represented by Plaintiff. Murphy Decl., ECF 154, ¶ 6.

[5] To the extent that Plaintiff asserts she or putative plaintiffs did not receive sufficient prejudgment interest due to FICA withholding, however, the Court grants Defendant's Motion.

judgment on that issue. Plaintiff, however, provides a Declaration and calculations from Jennifer Murphy who testifies that her calculations, based on data provided by Defendant, show that Plaintiff did not receive $5.15 wages she is due and many putative plaintiffs did not receive the full amount of wages they are due.

Defendant responds that Murphy does not explain why Defendant's calculated wages for Plaintiff and others are not correct or offer specific facts showing any individual calculations are wrong. Plaintiff states that she "has tried several ways to find out why [Defendant's] unpaid wage numbers don't match plaintiff's calculations . . . [b]ut . . . we do not know definitely why the two differ." Pl. Resp., ECF 152, at 25-26. Plaintiff "surmise[s] that [Defendant] used whole-employment data, while plaintiff was limited to the data only for the statute of limitations period, which is all that [Defendant] produced to plaintiff." *Id.* at 26. According to Defendant, therefore, Plaintiff's assertion that she and others did not receive all wages due is mere speculation, which is insufficient to defeat summary judgment.

Murphy, however, explains her methodology stating that she calculated the amounts due to Plaintiff and 29,824 putative plaintiffs "by calculating the difference between what an employee was paid based on rounded time and what they would have been paid using actual time punches for each pay period during the statute of limitations period while rounding was in effect using their applicable straight time and overtime rates." Murphy Decl., ¶ 6. Defendant calculated the amount due to Plaintiff and putative class members "by calculating the difference between what an employee was paid based on rounded time and what they would have been paid using actual time punches for each pay period during their employment while rounding was in effect using their applicable straight time and overtime rates." Anderson Decl., ECF 147, ¶ 3. On this record it is unclear why the parties obtained different results for wages due. Taking the evidence

23 – OPINION & ORDER

in the light most favorable to Plaintiff, the Court concludes that Plaintiff has established a genuine dispute of material fact exists as to whether Defendant's true-up payment paid Plaintiff and all putative plaintiffs all of their wages due. This portion of Plaintiff's claims is, therefore, not moot. Accordingly, the Court denies Defendant's Motion as to this aspect of Plaintiff's claims.

### IX.    Putative Plaintiffs Who Received Full Payment

In the alternative to complete summary judgment, Defendant requests partial summary judgment as to those putative plaintiffs that Plaintiff concedes received all relief they were due via the true-up payment because those putative plaintiffs' claims are moot. *See* Murphy Decl., Ex. 1. The Court agrees that because these putative plaintiffs received all the relief that the Court could provide them in this proceeding, the claims of these putative plaintiffs are moot. Accordingly, the Court grants Defendant's alternative Motion for Partial Summary Judgment as to all putative class members that Plaintiff concedes were fully paid.

### CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment, ECF 146, as follows:

1.    The Court GRANTS Defendant's Motion as to all putative class members that Plaintiff concedes were fully paid;

2.    The Court GRANTS Defendant's Motion as to any putative plaintiffs who claim that they were not fully compensated by the true-up payment solely because Defendant withheld FICA from the interest portion of the true-up payment;

24 – OPINION & ORDER

3.   The Court GRANTS Defendant's Motion as to the portion of Plaintiff's claims that rests on Defendant's withholding of FICA from the interest portion of the true-up payment;

4.   The Court DENIES Defendant's Motion as to the putative plaintiffs who did not cash the checks issued by Defendant;

5.   The Court DENIES Defendant's Motion as to the portion of Plaintiff and putative plaintiffs' claims that rest on Defendant's allegedly insufficient payment of prejudgment interest for reasons other than FICA withholding;

6.   The Court DENIES Defendant's Motion as to the portion of Plaintiff and putative plaintiffs' claims that rests on Defendant's allegedly insufficient payment of wages.

IT IS SO ORDERED.


DATED:_____03/17/2026_____.


_____
AMY M. BAGGIO
United States District Judge


25 – OPINION & ORDER